# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

---

Camp Douglas Rescue, Inc.,

                Plaintiff,

v.

Joni Klinge-West,

                Defendant.

Civil Action No.:  17-CV-358

**COMPLAINT FOR
DECLARATORY JUDGMENT**

---

Plaintiff Camp Douglas Rescue, Inc. ("Camp Douglas"), for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201(a), states and alleges as follows:

## PARTIES

1.  Camp Douglas is a non-profit corporation organized and doing business under the laws of the State of Wisconsin, with its principal place of business in Camp Douglas, Wisconsin.

2.  Klinge-West is a United States citizen and resident of the State of Wisconsin.

## JURISDICTION AND VENUE

3.  Jurisdiction for this Complaint is proper in this Court under 28 U.S.C. § 1331, as this matter involves questions of federal law arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, codified at 29 U.S.C. § 201, *et seq.*

4.  Jurisdiction is also appropriate pursuant to 28 U.S.C. § 2201, as this is an action for declaratory relief in which Camp Douglas requests that this Court declare the rights and obligations of the parties, as more fully described herein.

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(1) and (2), as Klinge-West is a resident of the State of Wisconsin, and a substantial part of the events or omission giving rise to the claim occurred within the Western District of Wisconsin.

## FACTS

**A.      THE EMPLOYMENT RELATIONSHIP BETWEEN CAMP DOUGLAS AND KLINGE-WEST.**

6.      Established in 1972, Camp Douglas is a non-profit operator of a local ambulance service that provides around-the-clock emergency response services to the municipalities of Camp Douglas, Necedah, and the surrounding communities in Juneau County, Wisconsin.

7.      From July 11, 2015 until January 31, 2017, Camp Douglas employed Klinge-West as an Intermediate Emergency Medical Technician ("EMT-IT").

8.      For the first several months of her employment, Klinge-West worked only an average of 15 hours per week and did not work more than 40 hours in any given week.

9.      Beginning in October 2015, Klinge-West began increasing her work schedule and, between October 2015 and May 2016, Klinge-West regularly worked in excess of 40 hours per week. Attached hereto as **Exhibit A** is a true and correct copy of Klinge-West's time clock records maintained by Camp Douglas.

10.     Although Klinge-West terminated her employment at Camp Douglas on January 31, 2017, the last date on which she worked any hours for Camp Douglas was May 10, 2016.

11.     At all times during her employment with Camp Douglas, Klinge-West earned

an hourly wage of $9.50 per hour.

12.     Camp Douglas paid Klinge-West  her hourly wage for every hour she worked

during her tenure at the company.

13.     However, Camp Douglas did not pay overtime to Klinge-West for the hours

that she worked in excess of 40 hours per week.

**B.     THE PARTIES DISPUTE WHETHER THE FLSA REQUIRED CAMP DOUGLAS TO PAY OVERTIME TO KLINGE-WEST.**

14.     On January 13, 2017, Klinge-West alleged that Camp Douglas had violated

the FLSA by failing to pay Klinge-West overtime for the hours that she worked in excess

of 40 hours per week.

15.     Camp Douglas asserted that it was not obligated to pay Klinge-West

overtime because it was not subject to the FLSA.

16.     The FLSA provision that establishes the requirement that employers pay

overtime, states as follows:

> [N]o employer shall employ any of his *employees who in any workweek is engaged in commerce or in the production of goods for commerce*, or is *employed in an enterprise engaged in commerce or in the production of goods for commerce*, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a) (emphasis added).

17.	However, the FLSA overtime provision only compels employers to pay overtime to its employees if the employer is an "enterprise engaged in commerce or in the production of goods for commerce," or if one or more of its employees are individually "engaged in commerce or in the production of goods for commerce." *See* 29. U.S.C. §07(a).

### a.	Camp Douglas Is Not an "Enterprise Engaged in Commerce or in the Production of Goods for Commerce."

18.	With regard to enterprise coverage, the FLSA defines "enterprise engaged in commerce or in the production of goods for commerce," as an employer that, among other things, "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes as the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A)(ii).

19.	Camp Douglas disputes that the FLSA obligates it to pay overtime to its employees because at no point in the 45-year history of the company has it done annual gross volume of sales made or business done of $500,000 or more and is thus not subject to enterprise coverage. Attached hereto as **Exhibit B** is a true and correct copy of Camp Douglas's profit and loss statements for 2015 and 2016, the years in which Klinge-West worked for Camp Douglas.

20.	In fact, Camp Douglas' gross volume of sales made or business done during 2015 was Four-Hundred Seventy-Three Thousand One-Hundred Forty-Eight and 68/100 Dollars ($473,148.68).

21.    For 2016, Camp Douglas' gross volume of sales made or business done was Four-Hundred Seventy-Four Thousand Five-Hundred Fifty and 92/100 Dollars ($474,550.92).

> **b.    Klinge-West Contended that She Was Individually Covered by the FLSA Overtime Requirement because She Was Personally "Engaged in Commerce or the Production of Goods for Commerce."**

22.    Because Camp Douglas is not subject to enterprise coverage under the FLSA, Klinge-West asserted that she was entitled to overtime under the FLSA because she was "engaged in commerce or in the production of goods for commerce" in the course and scope of her employment with Camp Douglas. 29 U.S.C. § 207(a).

23.    Neither Camp Douglas nor Klinge-West dispute that Klinge-West was not "engaged in the production of goods for commerce" at any time in the course of her employment with Company, as that term is defined in 29 C.F.R. § 779.104.

24.    However, Klinge-West has asserted—and Camp Douglas disputes—that Klinge-West was "engaged in commerce" because she was "performing work involving or relating to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof," as provided in 29 C.F.R. § 779.103.

25.    Klinge-West raised this theory on the grounds that, as a first responder and EMT-IT, Claimant was tasked with responding to emergencies and automobile accidents arising on public roadways and highways and was thus performing work relating to the movement of persons or things among the several States.

26. Camp Douglas disputes Klinge-West's theory and denies that Klinge-West was individually "engaged in commerce" in her duties with Camp Douglas, given that Camp Douglas operates entirely within the State of Wisconsin and does not otherwise touch or affect the flow of interstate commerce into or out of the State.

27. Both Camp Douglas and Klinge-West agree that neither the plain language of the FLSA or its attendant regulatory provisions are dispositive as to the outcome of their dispute over the application of the FLSA to this matter.

28. Both Camp Douglas and Klinge-West attempted to identify other binding legal authority that might govern the outcome of this matter within the Western District of Wisconsin, the Seventh Circuit Court of Appeals, and the United States Supreme Court, but were unable to do so.

      **c.    To Avoid the Uncertainty of Litigation, Camp Douglas and Klinge-West Entered into a Settlement Agreement.**

29. Beginning on January 13, 2017 and continuing until the parties reached a settlement on January 30, 2017 to resolve the FLSA matter, Camp Douglas and Klinge-West engaged in settlement discussions. The parties' proposed Settlement Agreement is attached hereto as **Exhibit C**.

30. In furtherance of those settlement discussions, Camp Douglas provided Klinge-West and her attorney with the time records attached hereto as **Exhibit A**. Both Camp Douglas and Klinge-West, after having the had the opportunity to audit Klinge-West's time records, agree that Klinge-West worked a total of four-hundred forty-seven

(447) hours for which she would be eligible to receive overtime if it were determined that she were individually covered by the FLSA.

31.　Because Klinge-West has already been paid straight time for all hours that she worked at Camp Douglas at her regular hourly wage of $9.50 per hour, the most that Klinge-West would be eligible to receive as back overtime compensation is equal to 447 hours multiplied by $4.75 (half of Klinge-West's hourly wage), or Two-Thousand One-Hundred Twenty-Three and 25/100 Dollars ($2,123.25).

32.　Klinge-West agreed to accept Two-Thousand One-Hundred Twenty-Three and 25/100 Dollars ($2,123.25) from Camp Douglas as payment in full for her disputed overtime claim.

33.　Because the parties resolved Klinge-West's disputed FLSA claim within two weeks of raising it, Klinge-West agreed to accept One-Thousand and 00/100 Dollars ($1,000) from Camp Douglas as payment in full for all attorneys' fees she incurred in pursuit of her FLSA claim.

### d.　The Parties Seek Judicial Approval of Their Settlement.

34.　Agreements to resolve FLSA disputes between employers and employees are unenforceable unless reviewed and approved by a court of competent jurisdiction. *See, e.g., Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) ("Courts therefore have refused to enforce wholly private [FLSA] settlements.") (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).

35.　Under *Lynn Foods*, the Court must consider the parties' proposed settlement agreement and, after reviewing its terms, determine whether the settlement constitutes "a

fair and reasonable resolution of a bona fide dispute," under the FLSA. *Lynn Food Stores*, 679 F.2d at 1355.

## CAUSES OF ACTION

### COUNT ONE
**(Declaratory Relief Pursuant to 28 U.S.C. § 2201)**

36.     Camp Douglas restates and realleges the foregoing Paragraphs of this Complaint as though fully stated herein.

37.     Given that Klinge-West and Camp Douglas dispute whether the FLSA imposes an obligation upon Camp Douglas to pay overtime to Klinge-West, and given that Klinge-West worked in excess of forty (40) hours per week during the course of her employment at Camp Douglas, an actual controversy exists between Klinge-West and Camp Douglas in the declaratory judgment action.

38.     Furthermore, given that the Settlement Agreement proposed by Camp Douglas and Klinge-West is not enforceable until it has been found by this Court to constitute a "fair and reasonable resolution of a bona fide dispute," the parties' actual controversy will continue until the parties are able to receive a judicial determination of the fairness of their settlement.

39.     Until such time as Camp Douglas is able to receive a determination as to the fairness of the parties' settlement, Camp Douglas will suffer uncertainty with respect to the respective rights and obligations of the parties to this action.

40.     As a result of the controversy, a real and justiciable issue exists with respect to the scope and application of certain valuable rights held by Klinge-West and Camp Douglas arising under the FLSA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Camp Douglas Rescue, Inc., requests that the Court enter judgment as follows:

1.      For a declaration that the settlement agreement between Camp Douglas Rescue, Inc. and Joni Klinge-West constitutes "a fair and reasonable resolution of a bona fide dispute," under the FLSA; and,

2.      For such other and further relief as the Court deems just and necessary.


Dated: May 12, 2017                          Lind, Jensen, Sullivan & Peterson
                                             A Professional Association

                                               /s/ Jason R. Prochnow
                                             Jason R. Prochnow, I.D. 1034213
                                             1300 AT&T Tower
                                             901 Marquette Avenue South
                                             Minneapolis, Minnesota 55402
                                             (612) 333-3637 | Fax: (612)333-1030

                                             ***Attorneys for Plaintiff Camp Douglas
                                             Rescue, Inc.***

# Report - Individual Member

**Joni Klinge-West**

## Availability Hours

| From | To | Type | Weekday | Weekend | Holiday | Total |
|------|----|----|---------|---------|---------|-------|
| Aug 15, 2015 at 00:00 | Aug 16, 2015 at 00:00 | Unavailable | 0 | 24 | 0 | 24 |
| Aug 17, 2015 at 06:00 | Aug 17, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Aug 18, 2015 at 06:00 | Aug 18, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Aug 19, 2015 at 06:00 | Aug 19, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Aug 20, 2015 at 06:00 | Aug 20, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Aug 21, 2015 at 06:00 | Aug 21, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Aug 22, 2015 at 00:00 | Aug 23, 2015 at 00:00 | Unavailable | 0 | 24 | 0 | 24 |
| Aug 24, 2015 at 06:00 | Aug 24, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Aug 25, 2015 at 06:00 | Aug 25, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Aug 26, 2015 at 06:00 | Aug 26, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Aug 27, 2015 at 06:00 | Aug 27, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Aug 28, 2015 at 06:00 | Aug 28, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Aug 31, 2015 at 06:00 | Aug 31, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 1, 2015 at 06:00 | Sep 1, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 1, 2015 at 17:00 | Sep 2, 2015 at 00:00 | Unavailable | 7 | 0 | 0 | 7 |
| Sep 2, 2015 at 06:00 | Sep 2, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 3, 2015 at 06:00 | Sep 3, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 3, 2015 at 17:00 | Sep 4, 2015 at 00:00 | Unavailable | 7 | 0 | 0 | 7 |
| Sep 4, 2015 at 06:00 | Sep 4, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 5, 2015 at 00:00 | Sep 6, 2015 at 00:00 | Unavailable | 0 | 24 | 0 | 24 |
| Sep 7, 2015 at 06:00 | Sep 7, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 8, 2015 at 06:00 | Sep 8, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 8, 2015 at 17:00 | Sep 9, 2015 at 00:00 | Unavailable | 7 | 0 | 0 | 7 |
| Sep 9, 2015 at 06:00 | Sep 9, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 10, 2015 at 06:00 | Sep 10, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 10, 2015 at 17:00 | Sep 11, 2015 at 00:00 | Unavailable | 7 | 0 | 0 | 7 |
| Sep 11, 2015 at 06:00 | Sep 11, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 14, 2015 at 06:00 | Sep 14, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 15, 2015 at 06:00 | Sep 15, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 15, 2015 at 17:00 | Sep 16, 2015 at 00:00 | Unavailable | 7 | 0 | 0 | 7 |
| Sep 16, 2015 at 06:00 | Sep 16, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 17, 2015 at 06:00 | Sep 17, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 17, 2015 at 17:00 | Sep 18, 2015 at 00:00 | Unavailable | 7 | 0 | 0 | 7 |
| Sep 18, 2015 at 06:00 | Sep 18, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 19, 2015 at 00:00 | Sep 20, 2015 at 00:00 | Unavailable | 0 | 24 | 0 | 24 |
| Sep 21, 2015 at 06:00 | Sep 21, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 22, 2015 at 06:00 | Sep 22, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 22, 2015 at 17:00 | Sep 23, 2015 at 00:00 | Unavailable | 7 | 0 | 0 | 7 |
| Sep 23, 2015 at 06:00 | Sep 23, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 24, 2015 at 06:00 | Sep 24, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 24, 2015 at 17:00 | Sep 25, 2015 at 00:00 | Unavailable | 7 | 0 | 0 | 7 |
| Sep 25, 2015 at 06:00 | Sep 25, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 28, 2015 at 06:00 | Sep 28, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 29, 2015 at 06:00 | Sep 29, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Sep 30, 2015 at 06:00 | Sep 30, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 1, 2015 at 06:00 | Oct 1, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 2, 2015 at 06:00 | Oct 2, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 5, 2015 at 06:00 | Oct 5, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 6, 2015 at 06:00 | Oct 6, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 7, 2015 at 06:00 | Oct 7, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 7, 2015 at 16:00 | Oct 8, 2015 at 08:00 | Available | 16 | 0 | 0 | 16 |
| Oct 8, 2015 at 08:00 | Oct 8, 2015 at 15:00 | Unavailable | 7 | 0 | 0 | 7 |
| Oct 9, 2015 at 06:00 | Oct 9, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 10, 2015 at 08:00 | Oct 11, 2015 at 08:00 | Available | 0 | 24 | 0 | 24 |
| Oct 12, 2015 at 06:00 | Oct 12, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 13, 2015 at 06:00 | Oct 13, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 14, 2015 at 06:00 | Oct 14, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 14, 2015 at 16:00 | Oct 15, 2015 at 08:00 | Available | 16 | 0 | 0 | 16 |
| Oct 15, 2015 at 08:00 | Oct 15, 2015 at 15:00 | Unavailable | 7 | 0 | 0 | 7 |
| Oct 16, 2015 at 06:00 | Oct 16, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 19, 2015 at 06:00 | Oct 19, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 20, 2015 at 06:00 | Oct 20, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 21, 2015 at 06:00 | Oct 21, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 21, 2015 at 16:00 | Oct 22, 2015 at 08:00 | Available | 16 | 0 | 0 | 16 |
| Oct 22, 2015 at 08:00 | Oct 22, 2015 at 15:00 | Unavailable | 7 | 0 | 0 | 7 |
| Oct 23, 2015 at 06:00 | Oct 23, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 24, 2015 at 08:00 | Oct 25, 2015 at 08:00 | Available | 0 | 24 | 0 | 24 |

| | | TOTAL HOURS: | 913 | 184 | 0 | 1097 |

**EXHIBIT A**

## Availability Hours

| From | To | Type | Weekday | Weekend | Holiday | Total |
|---|---|---|---|---|---|---|
| Oct 26, 2015 at 06:00 | Oct 26, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 27, 2015 at 06:00 | Oct 27, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 28, 2015 at 06:00 | Oct 28, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 29, 2015 at 06:00 | Oct 29, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Oct 30, 2015 at 06:00 | Oct 30, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 2, 2015 at 06:00 | Nov 2, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 3, 2015 at 06:00 | Nov 3, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 4, 2015 at 06:00 | Nov 4, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 5, 2015 at 06:00 | Nov 5, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 6, 2015 at 06:00 | Nov 6, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 9, 2015 at 06:00 | Nov 9, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 10, 2015 at 06:00 | Nov 10, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 11, 2015 at 06:00 | Nov 11, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 12, 2015 at 06:00 | Nov 12, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 13, 2015 at 06:00 | Nov 13, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 16, 2015 at 06:00 | Nov 16, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 17, 2015 at 06:00 | Nov 17, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 18, 2015 at 06:00 | Nov 18, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 19, 2015 at 06:00 | Nov 19, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 20, 2015 at 06:00 | Nov 20, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 23, 2015 at 06:00 | Nov 23, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 24, 2015 at 06:00 | Nov 24, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 25, 2015 at 06:00 | Nov 25, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 26, 2015 at 06:00 | Nov 26, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 27, 2015 at 06:00 | Nov 27, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Nov 30, 2015 at 06:00 | Nov 30, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Dec 1, 2015 at 06:00 | Dec 1, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Dec 2, 2015 at 06:00 | Dec 2, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Dec 3, 2015 at 06:00 | Dec 3, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Dec 4, 2015 at 06:00 | Dec 4, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Dec 7, 2015 at 06:00 | Dec 7, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Dec 8, 2015 at 06:00 | Dec 8, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Dec 9, 2015 at 06:00 | Dec 9, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Dec 10, 2015 at 06:00 | Dec 10, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Dec 11, 2015 at 06:00 | Dec 11, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Dec 14, 2015 at 06:00 | Dec 14, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Dec 15, 2015 at 06:00 | Dec 15, 2015 at 15:00 | Unavailable | 9 | 0 | 0 | 9 |
| Apr 24, 2016 at 08:00 | Apr 25, 2016 at 08:00 | Available | 8 | 16 | 0 | 24 |
| Apr 27, 2016 at 08:00 | Apr 28, 2016 at 08:00 | Available | 24 | 0 | 0 | 24 |
| Apr 30, 2016 at 08:00 | May 1, 2016 at 08:00 | Available | 0 | 24 | 0 | 24 |
| | | TOTAL HOURS: | 913 | 184 | 0 | 1097 |

## Paid Time Off

| From | To | Approved Type | Weekday | Weekend | Holiday | Total |
|---|---|---|---|---|---|---|
| Dec 6, 2015 at 08 | Dec 7, 2015 at 00 | Out of Town | 0 | 16 | 0 | 16 |
| Dec 7, 2015 at 00 | Dec 8, 2015 at 00 | Out of Town | 24 | 0 | 0 | 24 |
| Dec 8, 2015 at 00 | Dec 9, 2015 at 00 | Out of Town | 24 | 0 | 0 | 24 |
| Dec 9, 2015 at 00 | Dec 10, 2015 at 00 | Out of Town | 24 | 0 | 0 | 24 |
| Dec 10, 2015 at 00 | Dec 11, 2015 at 00 | Out of Town | 24 | 0 | 0 | 24 |
| Dec 11, 2015 at 00 | Dec 12, 2015 at 00 | Out of Town | 24 | 0 | 0 | 24 |
| Dec 12, 2015 at 00 | Dec 13, 2015 at 00 | Out of Town | 0 | 24 | 0 | 24 |
| Dec 13, 2015 at 00 | Dec 14, 2015 at 00 | Out of Town | 0 | 24 | 0 | 24 |
| Dec 14, 2015 at 00 | Dec 15, 2015 at 00 | Out of Town | 24 | 0 | 0 | 24 |
| Dec 15, 2015 at 00 | Dec 16, 2015 at 00 | Out of Town | 24 | 0 | 0 | 24 |
| | | SUBTOTAL: | 168 | 64 | 0 | 232 |
| Jan 28, 2016 at 20 | Jan 29, 2016 at 00 | School / Training | 4 | 0 | 0 | 4 |
| Jan 29, 2016 at 00 | Jan 29, 2016 at 08 | School / Training | 8 | 0 | 0 | 8 |
| Apr 15, 2016 at 08 | Apr 15, 2016 at 19 | School / Training | 11 | 0 | 0 | 11 |
| Apr 21, 2016 at 08 | Apr 22, 2016 at 00 | School / Training | 16 | 0 | 0 | 16 |
| Apr 22, 2016 at 00 | Apr 22, 2016 at 08 | School / Training | 8 | 0 | 0 | 8 |
| | | SUBTOTAL: | 47 | 0 | 0 | 47 |
| May 12, 2016 at 08 | May 13, 2016 at 00 | Medical Leave | 16 | 0 | 0 | 16 |
| May 13, 2016 at 00 | May 14, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| May 14, 2016 at 00 | May 15, 2016 at 00 | Medical Leave | 0 | 24 | 0 | 24 |
| May 15, 2016 at 00 | May 16, 2016 at 00 | Medical Leave | 0 | 24 | 0 | 24 |
| May 16, 2016 at 00 | May 16, 2016 at 19 | Medical Leave | 19 | 0 | 0 | 19 |
| May 17, 2016 at 00 | May 18, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| May 18, 2016 at 00 | May 19, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| May 19, 2016 at 00 | May 20, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| May 20, 2016 at 00 | May 21, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| May 21, 2016 at 00 | May 22, 2016 at 00 | Medical Leave | 0 | 24 | 0 | 24 |
| | | TOTAL HOURS: | 634 | 256 | 0 | 890 |

## Paid Time Off

| From | To | Approved Type | Weekday | Weekend | Holiday | Total |
|---|---|---|---|---|---|---|
| May 22, 2016 at 00 | May 23, 2016 at 00 | Medical Leave | 0 | 24 | 0 | 24 |
| May 23, 2016 at 00 | May 24, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| May 24, 2016 at 00 | May 25, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| May 25, 2016 at 00 | May 26, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| May 26, 2016 at 00 | May 27, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| May 27, 2016 at 00 | May 28, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| May 28, 2016 at 00 | May 29, 2016 at 00 | Medical Leave | 0 | 24 | 0 | 24 |
| May 29, 2016 at 00 | May 30, 2016 at 00 | Medical Leave | 0 | 24 | 0 | 24 |
| May 30, 2016 at 00 | May 31, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| May 31, 2016 at 08 | Jun 1, 2016 at 00 | Medical Leave | 16 | 0 | 0 | 16 |
| Jun 1, 2016 at 00 | Jun 2, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| Jun 2, 2016 at 00 | Jun 3, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| Jun 3, 2016 at 00 | Jun 4, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| Jun 4, 2016 at 00 | Jun 5, 2016 at 00 | Medical Leave | 0 | 24 | 0 | 24 |
| Jun 5, 2016 at 00 | Jun 6, 2016 at 00 | Medical Leave | 0 | 24 | 0 | 24 |
| Jun 6, 2016 at 00 | Jun 7, 2016 at 00 | Medical Leave | 24 | 0 | 0 | 24 |
| Jun 7, 2016 at 00 | Jun 7, 2016 at 08 | Medical Leave | 8 | 0 | 0 | 8 |
| | | SUBTOTAL: | 419 | 192 | 0 | 611 |
| | | TOTAL HOURS: | 634 | 256 | 0 | 890 |

## Time Clock Records

| Clock-In Time | In Location | Clock-In Message | Clock-Out Time | Out Location | Clock-Out Message | Paycode | Hours |
|---|---|---|---|---|---|---|---|
| Oct 16, 2015 at 11:59 | Unknown | Shannon Barr placed a trade request for this time off. I could not get here until noon to cover for her. | Oct 17, 2015 at 08:00 | Unknown | | Part-time DO NOT USE | 20h1m |
| Oct 24, 2015 at 07:54 | Unknown | | Oct 25, 2015 at 08:00 | Unknown | | Part-time DO NOT USE | 24h6m |
| Oct 30, 2015 at 14:08 | Unknown | In early to relieve Terry. | Oct 31, 2015 at 08:56 | Unknown | Finishing up reports | Part-time DO NOT USE | 18h48m |
| Nov 4, 2015 at 14:21 | Unknown | Came in early to relieve Davina. | Nov 5, 2015 at 08:31 | Unknown | Call late in shift. Finishing up call and report | Part-time DO NOT USE | 18h10m |
| Nov 6, 2015 at 15:00 | Unknown | Here early to relieve Terry | Nov 7, 2015 at 16:27 | Unknown | finishing up report and restocking from a trauma call | Part-time DO NOT USE | 25h27m |
| Nov 10, 2015 at 07:55 | Unknown | | Nov 11, 2015 at 08:23 | Unknown | Worked until 0800 for Terry and then went over schedule for C shift | Part-time DO NOT USE | 24h28m |
| Nov 13, 2015 at 07:51 | Unknown | | Nov 13, 2015 at 17:56 | Unknown | | Part-time DO NOT USE | 10h5m |
| Nov 13, 2015 at 20:01 | Unknown | | Nov 14, 2015 at 08:15 | Unknown | finishing report | Part-time DO NOT USE | 12h14m |
| Nov 16, 2015 at 08:00 | Unknown | | Nov 17, 2015 at 15:56 | Unknown | | Part-time DO NOT USE | 31h56m |
| Nov 19, 2015 at 14:49 | Unknown | Here early to relieve Davina | Nov 20, 2015 at 10:20 | Unknown | finishing reports from a late call | Part-time DO NOT USE | 19h31m |
| Nov 21, 2015 at 07:57 | Unknown | | Nov 23, 2015 at 08:37 | Unknown | finishing report | Part-time DO NOT USE | 48h40m |
| Nov 25, 2015 at 17:52 | Unknown | | Nov 26, 2015 at 07:59 | Unknown | | Part-time DO NOT USE | 14h7m |
| Nov 28, 2015 at 07:54 | Unknown | | Nov 29, 2015 at 08:03 | Unknown | | Part-time DO NOT USE | 24h9m |
| Dec 1, 2015 at 07:53 | Unknown | | Dec 2, 2015 at 07:40 | Unknown | going home sick. Terry came in to cover | Part-time DO NOT USE | 23h47m |
| Dec 4, 2015 at 07:56 | Unknown | | Dec 4, 2015 at 19:47 | Unknown | Finishing reports at station 1 and at station 2 | Part-time DO NOT USE | 11h51m |
| Dec 5, 2015 at 07:56 | Unknown | | Dec 6, 2015 at 07:59 | Unknown | | Part-time DO NOT USE | 24h3m |
| Dec 16, 2015 at 07:55 | Unknown | | Dec 16, 2015 at 18:00 | Unknown | | Part-time DO NOT USE | 10h5m |
| Dec 17, 2015 at 07:58 | Unknown | | Dec 18, 2015 at 10:05 | Unknown | I was on the schedule until 10:00 | Part-time DO NOT USE | 26h7m |
| Dec 20, 2015 at 07:54 | Unknown | | Dec 21, 2015 at 07:56 | Unknown | | Part-time DO NOT USE | 24h2m |
| Dec 22, 2015 at 07:53 | Unknown | | Dec 22, 2015 at 19:33 | Unknown | finishing report | Part-time DO NOT USE | 11h40m |
| Dec 23, 2015 at 11:58 | Unknown | | Dec 24, 2015 at 07:57 | Unknown | | | 19h59m |
| | | | | | | TOTAL HOURS: | 1582H48M |

# Time Clock Records

| Clock-In Time | In Location | Clock-In Message | Clock-Out Time | Out Location | Clock-Out Message | Paycode | Hours |
|---|---|---|---|---|---|---|---|
| | | | | | | Part-time DO NOT USE | |
| Dec 26, 2015 at 07:55 | Unknown | | Dec 27, 2015 at 07:55 | Unknown | | Part-time DO NOT USE | 24h0m |
| Dec 27, 2015 at 17:52 | Unknown | | Dec 28, 2015 at 07:57 | Unknown | | Part-time DO NOT USE | 14h5m |
| Dec 29, 2015 at 08:05 | Unknown | | Dec 30, 2015 at 07:57 | Unknown | | Part-time DO NOT USE | 23h52m |
| Jan 1, 2016 at 07:51 | Unknown | | Jan 2, 2016 at 07:55 | Unknown | | Part-time DO NOT USE | 24h4m |
| Jan 4, 2016 at 07:51 | Unknown | | Jan 5, 2016 at 07:56 | Unknown | | Part-time DO NOT USE | 24h5m |
| Jan 7, 2016 at 07:58 | Unknown | | Jan 8, 2016 at 07:58 | Unknown | | Part-time DO NOT USE | 24h0m |
| Jan 10, 2016 at 07:59 | Unknown | | Jan 11, 2016 at 08:04 | Unknown | | Part-time DO NOT USE | 24h5m |
| Jan 13, 2016 at 07:50 | Unknown | | Jan 14, 2016 at 07:59 | Unknown | | Part-time DO NOT USE | 24h9m |
| Jan 16, 2016 at 08:00 | Unknown | | Jan 17, 2016 at 07:53 | Unknown | | Part-time DO NOT USE | 23h53m |
| Jan 19, 2016 at 07:58 | Unknown | | Jan 20, 2016 at 07:59 | Unknown | | Part-time DO NOT USE | 24h1m |
| Jan 22, 2016 at 08:13 | Unknown | I was here before 8 am but was in a meeting with the station captain | Jan 23, 2016 at 07:59 | Unknown | | Part-time DO NOT USE | 23h46m |
| Jan 25, 2016 at 07:57 | Unknown | | Jan 26, 2016 at 08:00 | Unknown | | Part-time DO NOT USE | 24h3m |
| Jan 28, 2016 at 07:58 | Unknown | | Jan 28, 2016 at 21:37 | Unknown | transfer to UW | Part-time DO NOT USE | 13h39m |
| Jan 31, 2016 at 08:03 | Unknown | | Feb 1, 2016 at 08:00 | Unknown | | Part-time DO NOT USE | 23h57m |
| Feb 3, 2016 at 08:00 | Unknown | I was here at 0800 but forgot to clock in with all of the incoming and off going crew. | Feb 4, 2016 at 07:55 | Unknown | | Part-time DO NOT USE | 23h55m |
| Feb 6, 2016 at 07:57 | Unknown | | Feb 7, 2016 at 08:51 | Unknown | late shift call and restocking and report | Part-time DO NOT USE | 24h54m |
| Feb 8, 2016 at 06:47 | Unknown | covering for Terry | Feb 8, 2016 at 11:21 | Unknown | Terry was back early | Part-time DO NOT USE | 4h34m |
| Feb 9, 2016 at 07:57 | Unknown | | Feb 10, 2016 at 07:56 | Unknown | | Part-time DO NOT USE | 23h59m |
| Feb 11, 2016 at 07:50 | Unknown | | Feb 11, 2016 at 17:57 | Unknown | late call | Part-time DO NOT USE | 10h7m |
| Feb 12, 2016 at 07:50 | Unknown | | Feb 13, 2016 at 07:57 | Unknown | | Part-time DO NOT USE | 24h7m |
| Feb 15, 2016 at 07:55 | Unknown | | Feb 16, 2016 at 16:10 | Unknown | Spoke with Station 2 captain that we would only be working until 1600 today. Was finishing up a report until 1610. | Part-time DO NOT USE | 32h15m |
| Feb 18, 2016 at 07:51 | Unknown | | Feb 19, 2016 at 08:20 | Unknown | last minute report and report to Terry | Part-time DO NOT USE | 24h29m |
| Feb 21, 2016 at 07:56 | Unknown | | Feb 22, 2016 at 08:00 | Unknown | | Part-time DO NOT USE | 24h4m |
| Feb 24, 2016 at 07:51 | Unknown | | Feb 25, 2016 at 07:57 | Unknown | | Part-time DO NOT USE | 24h6m |
| Feb 27, 2016 at 07:52 | Unknown | | Feb 28, 2016 at 07:55 | Unknown | | Part-time DO NOT USE | 24h3m |
| Mar 1, 2016 at 07:57 | Unknown | | Mar 2, 2016 at 10:14 | Unknown | late call and finishing report | Part-time DO NOT USE | 26h17m |
| Mar 4, 2016 at 07:53 | Unknown | | Mar 4, 2016 at 09:42 | Unknown | edited for Transfer AW | Part-time DO NOT USE | 1h49m |
| Mar 4, 2016 at 13:50 | Unknown | Clocked in by administrator Alex Wilson; added time for shift after transfer | Mar 6, 2016 at 07:55 | Unknown | Clocked out by administrator Alex Wilson | Part-time DO NOT USE | 42h5m |
| Mar 7, 2016 at 07:51 | Unknown | | Mar 8, 2016 at 07:58 | Unknown | | Part-time DO NOT USE | 24h7m |

TOTAL HOURS: 1582H48M

## Time Clock Records

| Clock-In Time | In Location | Clock-In Message | Clock-Out Time | Out Location | Clock-Out Message | Paycode | Hours |
|---|---|---|---|---|---|---|---|
| Mar 10, 2016 at 07:50 | Unknown | | Mar 11, 2016 at 08:01 | Unknown | | Part-time DO NOT USE | 24h11m |
| Mar 13, 2016 at 07:56 | Unknown | | Mar 14, 2016 at 08:01 | Unknown | | Part-time DO NOT USE | 24h5m |
| Mar 16, 2016 at 07:50 | Unknown | | Mar 17, 2016 at 07:56 | Unknown | | Part-time DO NOT USE | 24h6m |
| Mar 22, 2016 at 07:58 | Unknown | | Mar 23, 2016 at 07:57 | Unknown | | Part-time DO NOT USE | 23h59m |
| Mar 25, 2016 at 07:59 | Unknown | Clocked in by administrator Alex Wilson | Mar 25, 2016 at 17:30 | Unknown | Clocked out by administrator Alex Wilson leaving for transfer | Part-time DO NOT USE | 9h31m |
| Mar 25, 2016 at 22:05 | Unknown | return from transfer | Mar 26, 2016 at 08:02 | Unknown | | Part-time DO NOT USE | 9h57m |
| Mar 28, 2016 at 07:52 | Unknown | | Mar 29, 2016 at 07:51 | Unknown | | Part-time DO NOT USE | 23h59m |
| Mar 29, 2016 at 09:21 | Unknown | Clocked in by administrator Alex Wilson | Mar 29, 2016 at 13:10 | Unknown | Clocked out by administrator Alex Wilson | Part-time DO NOT USE | 3h49m |
| Mar 29, 2016 at 16:50 | Unknown | Back from appointment and told admins that I would be here as soon as possible after my appointment | Mar 29, 2016 at 18:06 | Unknown | | Part-time DO NOT USE | 1h16m |
| Mar 31, 2016 at 08:00 | Unknown | | Apr 1, 2016 at 08:50 | Unknown | discussing and debriefing call | Part-time DO NOT USE | 24h50m |
| Apr 3, 2016 at 07:41 | Unknown | car accident | Apr 4, 2016 at 07:56 | Unknown | | Part-time DO NOT USE | 24h15m |
| Apr 6, 2016 at 07:50 | Unknown | | Apr 7, 2016 at 09:42 | Unknown | finishing report from late morning call | Part-time DO NOT USE | 25h52m |
| Apr 9, 2016 at 07:49 | Unknown | EVOC | Apr 10, 2016 at 21:26 | Unknown | finishing up report from late call | Part-time DO NOT USE | 37h37m |
| Apr 12, 2016 at 07:45 | Unknown | Meeting with station captain | Apr 13, 2016 at 11:31 | Unknown | Finishing report from late call | Part-time DO NOT USE | 27h46m |
| Apr 15, 2016 at 12:16 | Unknown | In early because I am done with CPR Instructor renewal | Apr 16, 2016 at 09:40 | Unknown | long call and finishing report | Part-time DO NOT USE | 21h24m |
| Apr 18, 2016 at 07:51 | Unknown | | Apr 19, 2016 at 07:51 | Unknown | | Part-time DO NOT USE | 24h0m |
| Apr 24, 2016 at 07:55 | Unknown | | Apr 25, 2016 at 07:57 | Unknown | | Part-time DO NOT USE | 24h2m |
| Apr 27, 2016 at 07:50 | Unknown | | Apr 28, 2016 at 10:16 | Unknown | late run and finishing report | Part-time DO NOT USE | 26h26m |
| Apr 30, 2016 at 08:00 | Unknown | In early...do not pay until 0800. | May 1, 2016 at 18:52 | Unknown | | Part-time DO NOT USE | 34h52m |
| May 3, 2016 at 18:58 | Unknown | | May 4, 2016 at 19:52 | Unknown | late call | Part-time DO NOT USE | 24h54m |
| May 6, 2016 at 18:51 | Unknown | | May 7, 2016 at 18:57 | Unknown | | Part-time DO NOT USE | 24h6m |
| May 9, 2016 at 18:57 | Unknown | | May 10, 2016 at 19:02 | Unknown | | Part-time DO NOT USE | 24h5m |

TOTAL HOURS: 1582H48M

## Trades Information

| Requested Trades | | Recipient Requests | |
|---|---|---|---|
| Pending Trades: | 0 | Requests Un-accepted as Recipient: | 40 |
| Accepted and Approved Trades: | 5 | Un-approved Requests Accepted as Recipient: | 8 |
| Trades Denied by Admin: | 5 | Trades Canceled by Member: | 0 |
| Expired Trades: | 1 | Approved Requests Accepted as Recipient: | 1 |
| Trades canceled by the system: | 0 | | |
| TOTAL REQUESTED TRADES: | 11 | TOTAL RECIPIENT REQUESTS: | 49 |

## Member Attributes

### Member Information

| First Name: | Joni | Mobile Phone: | 6084344474 | Date Hired: | 2015-07-01 |
|---|---|---|---|---|---|
| Last Name: | Klinge-West | Email: | joni.klinge@gmail.com | Employee Type: | Part Time |
| Work Group: | ** unnamed work group ** | | | | |

## General Information

# Member Attributes

## Member Information

| | | | |
|---|---|---|---|
| **Title:** | AEMT | **Date of Meet/Greet:** | |
| **Home Phone:** | | **EMT #:** | EMT 34 |
| **Date of Birth:** | 1981-09-13 | **CD Issued Pager ID #:** | |
| **Drivers License #:** | K452-4338-1833-05 | **CD Issued Radio ID #:** | |
| **Drivers License Exp:** | 2022-09-13 | **Probationary Period Expires:** | |
| | | **End Employment Date:** | |
| | | **Elegible for Re-Hire?:** | |

## State Licensure

| | | | |
|---|---|---|---|
| **State License #:** | 70104645 | **First Responder License Expires:** | |
| **State License #: Expires:** | 2018-06-30 | **First Responder License #:** | |
| **State EMT-B License: Issued:** | 2014-01-08 | | |

## National Registry

| | |
|---|---|
| **National Registry #:** | A2010431 |
| **National Registry: Completed:** | 2015-05-08 |
| **National Registry: Expires:** | 2017-03-31 |

## Required Certifications

| | | | |
|---|---|---|---|
| **EMT-B Course: Completed:** | 2013-12-18 | **CPR Certification: Completed:** | 2016-04-15 |
| **EMT-IT > AEMT Transition:** | | **CPR Certification: Expires:** | 2018-04-30 |
| **EMT-P Course: Completed:** | | | |
| **EMT-IT Course: Completed:** | | | |
| **AEMT Course: Completed:** | 2015-04-22 | | |

## Required for Driving

| | | | |
|---|---|---|---|
| **EVOC Certification: Completed:** | 2016-04-09 | **Driving Course- Optional:** | |

## Instructor Certifications

| | |
|---|---|
| **BLS CPR Instructor: Issued:** | 2016-04-15 |
| **BLS CPR Instructor: Expires:** | 2018-04-30 |

## ICS Certifications

| | | | |
|---|---|---|---|
| **ICS 100HCb: Completed:** | | **ICS 400: Completed:** | 2015-01-08 |
| **ICS 100b: Completed:** | 2015-01-08 | **ICS 700: Completed:** | 2015-01-08 |
| **ICS 200: Completed:** | 2015-01-08 | **ICS 800: Completed:** | 2016-01-25 |
| **ICS 300: Completed:** | | | |

## Misc Certifications

| | | | |
|---|---|---|---|
| **Opticom: Completed:** | | **MABAS Training: Completed:** | |
| | | **HIPAA Certification: Completed:** | |

## Refreshers

| | | | |
|---|---|---|---|
| **EMT-B Refresher: Completed:** | 2015-05-02 | **EMT-IT Refresher: Completed:** | |
| **AEMT Refresher: Completed:** | 2015-05-02 | **EMT-P Refresher: Completed:** | |
| **EVOC Refresher: Completed:** | | | |

## Advanced Certifications

| | | | |
|---|---|---|---|
| | | **PHTLS: Expires:** | |
| **ACLS: Expires:** | | **PALS: Expires:** | |
| **PEPP: Expires:** | | **ATLS: Expires:** | |
| **BTLS: Expires:** | | **RN License:** | |
| **PAT: Completed:** | | | |

## Immunizations- Office use

| | | | |
|---|---|---|---|
| **TB/Mantoux: Completed:** | 2015-01-28 | **Hepatitis B Shots: Completed:** | 1997-11-24 |
| **Tetanus:** | Tdap | **Hep B Titer:** | |
| **Tdap or Td:** | 2012-07-30 | **Hep B Titer Immune:** | |
| | | **Notes:** | |

# CAMP DOUGLAS RESCUE, INC.
## Profit & Loss
### January through December 2015

|  | Jan - Dec 15 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| **Contributions Income** | |
| Unrestricted | 1,200.00 |
| Contributions Income - Other | 415.00 |
| **Total Contributions Income** | 1,615.00 |
| Interest Income | 40.22 |
| Municipal Contract Fees | 89,515.86 |
| Operations Revenue | 381,977.60 |
| **Total Income** | 473,148.68 |
| **Gross Profit** | 473,148.68 |
| **Expense** | |
| Advertising | 70.00 |
| Auto Fuel | 15,660.50 |
| **Auto Repair Expense** | |
| Unit 425 (2003) | 4,187.44 |
| Unit 426 (2007) | 3,752.04 |
| Unit 427 (2012) | 3,346.37 |
| Auto Repair Expense - Other | 12,513.88 |
| **Total Auto Repair Expense** | 23,799.73 |
| Bank Service Charges | 85.55 |
| Computer Expenses | 2,514.38 |
| Dues and Subscriptions | 4,203.00 |
| Employee Appreciation | 3,826.26 |
| Equipment Expense | 15,334.18 |
| **Insurance** | |
| Disability Insurance | 23,011.50 |
| Liability Insurance | 6,990.00 |
| **Total Insurance** | 30,001.50 |
| **Interest Expense** | |
| Finance Charge | 62.52 |
| **Total Interest Expense** | 62.52 |
| Licenses and Permits | 20.00 |
| Medical Supplies | 27,766.73 |
| **Payroll Expenses** | |
| Gross Wages | 236,749.23 |
| Payroll Expenses - Other | 15,041.87 |
| **Total Payroll Expenses** | 251,791.10 |
| **Payroll Taxes** | |
| FICA | 15,611.04 |
| FUTA | 4,788.91 |
| Medicare | 3,650.96 |
| **SUI** | |
| Unemployment Insurance | 1,930.16 |
| SUI - Other | 0.00 |
| **Total SUI** | 1,930.16 |
| **Total Payroll Taxes** | 25,981.07 |
| Postage and Delivery | 156.24 |


EXHIBIT
B

# CAMP DOUGLAS RESCUE, INC.
## Profit & Loss
### January through December 2015

|  | Jan - Dec 15 |
|---|---|
| **Professional Fees** | |
| Accounting | 4,660.81 |
| **Total Professional Fees** | 4,660.81 |
| **Staff Training** | 1,803.03 |
| **Station 1** | |
| Office Supplies | 4,701.92 |
| Rent | 9,815.85 |
| Telephone | 3,768.98 |
| Utilities | |
| Gas and Electric | 6,066.16 |
| Water | 1,294.24 |
| **Total Utilities** | 7,360.40 |
| **Total Station 1** | 25,647.15 |
| **Transfer Set-Up Fee** | 2,298.00 |
| **Travel & Ent** | |
| Travel | 39.79 |
| **Total Travel & Ent** | 39.79 |
| **Total Expense** | 435,721.54 |
| **Net Ordinary Income** | 37,427.14 |
| **Net Income** | **37,427.14** |

# CAMP DOUGLAS RESCUE, INC.
## Profit & Loss
### January through December 2016

|  | Jan - Dec 16 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| **Contributions Income** | |
| Unrestricted | 2,665.00 |
| Contributions Income - Other | 2,675.00 |
| **Total Contributions Income** | 5,340.00 |
| Grants | 8,456.25 |
| Interest Income | 26.04 |
| Miscellaneous Income | 21,287.59 |
| **Municipal Contract Fees** | |
| Rent | 103.11 |
| **Total Municipal Contract Fees** | 103.11 |
| Operations Revenue | 440,135.97 |
| Program Fees | 55.00 |
| **Total Income** | 475,403.96 |
| **Cost of Goods Sold** | |
| Uniforms | 853.04 |
| **Total COGS** | 853.04 |
| **Gross Profit** | 474,550.92 |
| **Expense** | |
| **Advertising** | |
| Community Relations | 5.68 |
| Advertising - Other | 565.00 |
| **Total Advertising** | 570.68 |
| **Auto Fuel** | |
| Rig 425 (2003) | 614.19 |
| Rig 426 (2007) | 2,150.99 |
| Rig 427 (2012) | 1,124.37 |
| Rig 428 | 321.85 |
| Auto Fuel - Other | 11,518.36 |
| **Total Auto Fuel** | 15,729.76 |
| **Auto Repair Expense** | |
| Unit 425 (2003) | 7,834.73 |
| Unit 426 (2007) | 6,396.93 |
| Unit 427 (2012) | 18,769.72 |
| Unit 428 2006 | -4,053.23 |
| Auto Repair Expense - Other | 132.77 |
| **Total Auto Repair Expense** | 29,080.92 |
| Bank Service Charges | 11.02 |
| Cash Discounts | 149.02 |
| Computer Expenses | 133.41 |
| Delivery Fee | 118.24 |
| **Dues and Subscriptions** | |
| D & S Computer Software | 535.59 |
| Dues and Subscriptions - Other | 4,205.15 |
| **Total Dues and Subscriptions** | 4,740.74 |
| Employee Appreciation | 1,120.63 |

# CAMP DOUGLAS RESCUE, INC.
## Profit & Loss
### January through December 2016

| | Jan - Dec 16 |
|---|---:|
| **Equipment Expense** | |
| Defib 204911 | 150.00 |
| Defib 204914 | 60.00 |
| Defib 204955 | 270.00 |
| Equipment Expense - Other | 4,115.22 |
| **Total Equipment Expense** | 4,595.22 |
| | |
| **Insurance** | |
| Disability Insurance | 24,843.00 |
| Liability Insurance | 7,530.00 |
| Workmans Comp | 21,128.00 |
| **Total Insurance** | 53,501.00 |
| | |
| **Intercept / Mutual Aid Fees** | 0.00 |
| Intercept Fee | 600.00 |
| Late Fee / Penalty | 468.60 |
| Licenses and Permits | 10.00 |
| **Medical Supplies** | |
| Drugs | 826.57 |
| Medical Supplies - Other | 23,886.18 |
| **Total Medical Supplies** | 24,712.75 |
| | |
| Mileage | 47.52 |
| Misc Expense | -5,878.23 |
| **Payroll Expenses** | |
| Benefits | 527.54 |
| Gross Wages | 327,132.80 |
| Payroll Expenses - Other | 107.16 |
| **Total Payroll Expenses** | 327,767.50 |
| | |
| **Payroll Taxes** | |
| FICA | 20,282.25 |
| FUTA | 824.08 |
| Medicare | 4,743.41 |
| **SUI** | |
| Unemployment Insurance | 4,026.30 |
| SUI - Other | 611.94 |
| **Total SUI** | 4,638.24 |
| **Total Payroll Taxes** | 30,487.98 |
| | |
| Postage and Delivery | 203.53 |
| **Professional Fees** | |
| Accounting | 3,661.25 |
| **Total Professional Fees** | 3,661.25 |
| | |
| Reconciliation Discrepancies | 246.95 |
| **Rig Supplies** | |
| Rig Supplies 428 | 311.55 |
| **Total Rig Supplies** | 311.55 |
| | |
| Staff Training | 2,588.61 |
| **Station 1** | |
| Office Supplies | 2,215.20 |
| Rent | 7,207.00 |
| Repair & Maintenance | 66.39 |
| Station Supplies | 896.20 |
| Telephone | 3,263.39 |

# CAMP DOUGLAS RESCUE, INC.
## Profit & Loss
### January through December 2016

|  | Jan - Dec 16 |
|---|---|
| Utilities |  |
| Gas and Electric | 4,666.18 |
| Water | 754.31 |
| **Total Utilities** | **5,420.49** |
| **Total Station 1** | **19,068.67** |
| Station 2 |  |
| Cable TV | 227.70 |
| Office Supplies | 290.70 |
| Rent | 3,893.01 |
| Repair & Maintenance S2 | 74.03 |
| Station Supplies | 527.97 |
| Telephone | 620.20 |
| Utilites |  |
| Gas & Electric | 574.44 |
| Water | 549.44 |
| Utilites - Other | 1,180.09 |
| **Total Utilites** | **2,303.97** |
| **Total Station 2** | **7,937.58** |
| Transfer Set-Up Fee | 2,335.00 |
| Travel & Ent |  |
| Travel | 257.58 |
| **Total Travel & Ent** | **257.58** |
| **Total Expense** | **524,577.48** |
| **Net Ordinary Income** | **-50,026.56** |
| Other Income/Expense |  |
| Other Expense |  |
| Sales Tax Paid | 10.87 |
| **Total Other Expense** | **10.87** |
| **Net Other Income** | **-10.87** |
| **Net Income** | **-50,037.43** |

# SETTLEMENT AGREEMENT
## AND RELEASE OF WAGE AND HOUR CLAIMS

This Settlement Agreement and Release of Claims arising under the Fair Labor Standards Act of 1938 ("Settlement Agreement") is entered into between Camp Douglas Rescue, Inc., (the "Company") and Joni Klinge-West ("Claimant") (collectively referred to as the "Parties").

## RECITALS

**WHEREAS**, Company is a non-profit operator of a local ambulance service that provides around-the-clock emergency response services to Camp Douglas, Necedah, and the surrounding communities in Juneau County, Wisconsin.

**WHEREAS**, Claimant was employed by Company as an Intermediate Emergency Medical Technician ("EMT-IT") from July 11, 2015 until January 31, 2017.

**WHEREAS**, at all times Claimant was employed by Company she earned a regular rate of $9.50 per hour.

**WHEREAS**, Claimant does not dispute that she was paid her regular rate for every hour she worked on behalf of Company between July 11, 2015 and January 31, 2017.

**WHEREAS**, on or January 13, 2017, Claimant—by and through her attorney in the context of negotiations to resolve an unrelated matter—alleged that Company had violated the Fair Labor Standards Act of 1938 ("FLSA") by failing to pay Claimant overtime for hours worked per week in excess of 40 hours.

**WHEREAS**, the FLSA overtime provision states as follows:

> [N]o employer shall employ any of his *employees who in any workweek is engaged in commerce or in the production of goods for commerce*, or is *employed in an enterprise engaged in commerce or in the production of goods for commerce*, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a) (emphasis added).



**WHEREAS**, the FLSA overtime provision only compels employers to pay overtime to its employees if the employer is an "enterprise engaged in commerce or in the production of goods for commerce," or if one or more of its employees are individually "engaged in commerce or in the production of goods for commerce." *See* 29. U.S.C. § 207(a).

**WHEREAS**, the FLSA defines "enterprise engaged in commerce or in the production of goods for commerce," as an employer that, among other things, "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes as the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A)(ii).

**WHEREAS**, Company denies that it is obligated to pay overtime to its employees under the FLSA, given that at no point in the 45 year history of the Company has it done annual gross volume of sales made or business done of $500,000 or more and thus does not meet the threshold requirement of qualifying as an "enterprise engaged in commerce or the production of goods for commerce."

**WHEREAS**, Claimant alleges that she is entitled to overtime under the FLSA because she was "engaged in commerce or the production of goods for commerce" in the course of her employment with Company.

**WHEREAS**, Company and Claimant do not dispute that Claimant was not "engaged in the production of goods for commerce" at any time in the course of her employment with Company, as that term is defined in 29 C.F.R. § 779.104.

**WHEREAS**, Claimant alleges, and Company disputes, that Claimant was "engaged in commerce" because she was "performing work involving or relating to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof," as provided in 29 C.F.R. § 779.103.

**WHEREAS**, the basis for Claimant's allegation rests on the fact that, as a first responder and EMT-IT, Claimant was tasked with responding to emergencies and automobile accidents arising on public roadways and highways and was thus performing work relating to the movement of persons or things among the several States.

**WHEREAS**, Company denies Claimant's assertion that employee was individually "engaged in commerce" in her duties with Company, given that Company operates entirely within the State of Wisconsin and does not otherwise touch or affect the flow of interstate commerce into or out of the State.

**WHEREAS**, Company and Claimant agree that the FLSA and attendant regulatory provisions are not dispositive as to the outcome of their dispute over application of the FLSA to this matter.

**WHEREAS**, Company and Claimant have attempted to identify any other binding legal authority that might govern the outcome of this matter within the Western District of Wisconsin, Seventh Circuit Court of Appeals, and the United States Supreme Court, but have been unable to do so.

**WHEREAS**, Company and Claimant and agree that the application of the FLSA overtime requirements to Company and Claimant is in dispute.

**WHEREAS**, Claimant and the Company, after having had the opportunity to audit Claimant's time records, agree that Claimant worked a total of four-hundred forty-seven (447) hours for which she would be eligible to receive overtime if it were determined that she were individually covered by the FLSA.

**WHEREAS**, given that Claimant has already been paid straight time for all hours worked with Company at a regular rate of $9.50 per hour, the most that Claimant would be eligible to receive as back overtime compensation is equal to 447 hours multiplied by $4.75 (half of Claimant's regular rate), or $2,123.25.

**WHEREAS**, given that Claimant's overtime claim was first raised on January 13, 2017 and was settled on January 30, 2017, prior to the initiation of litigation, Claimant has incurred approximately $1,000 in attorneys' fees.

**WHEREAS**, Claimant has agreed to waive her ability to recover liquidated damages in the interest of compromising this disputed claim.

**WHEREAS**, Company disputes that Claimant has suffered any damages.

**NOW THEREFORE**, in consideration of the mutual promises and covenants in this Agreement and for other good and valuable consideration, which the Parties acknowledge is sufficient, the Parties agree as follows:

1. **PROCESS FOR APPROVAL OF SETTLEMENT.**

Within fifteen (15) days following receipt of the complete and fully executed Settlement Agreement, Company shall initiate a declaratory action in the United States District Court for the Western District of Wisconsin for the purposes of obtaining judicial approval of the terms of this Settlement Agreement. The Parties will then jointly file a stipulated motion for judgment on the pleadings, made pursuant to Fed. R. Civ. P. 12(c), in which the Parties will agree upon the reasonableness of the terms of the Settlement Agreement and will present evidence in support thereof. The Parties agree to submit to the Court all papers necessary to obtain approval of this Settlement Agreement.

2. **PAYMENT OF SETTLEMENT PROCEEDS.**

The Parties acknowledge and agree that Company's disputed violation of the FLSA is settled and resolved for the sum of Three-Thousand One-Hundred Twenty-Three and 25/100 Dollars ($3,123.25) (the "Settlement Amount"), itemized as follows:

    a.    Two-Thousand One-Hundred Twenty-Three and 25/100 Dollars ($2,123.25) (the "Overtime Amount") as back pay wages for allegedly unpaid overtime during the period between July 11, 2015 and January 31, 2017; and,

    b.    One-Thousand and 00/100 Dollars ($1,000.00) ("Attorneys' Fees) to compensate Claimant for any and all attorneys' fees she may have incurred in pursuit of this claim.

Claimant acknowledges that the Settlement Amount is sufficient and adequate consideration in exchange for the Parties' promises, releases, and covenants as set forth below. Within ten (10) business days following the Court's final approval of this Settlement Agreement, Company will deliver the Settlement Amount to Claimant's counsel, Hale, Skemp, Hanson, Skemp & Sleik, c/o Thomas J. Kieffer, Esq., at 505 King Street, Suite 300, LaCrosse, Wisconsin 54601. The Overtime Amount will be paid as regular payroll to Claimant, which means that all requisite withholdings and deductions will be made from the Overtime Amount, and will be reported for tax purposes on IRS Form W-2. The Attorneys' Fees payment will be made by check to Hale,

Skemp, Hanson, Skemp & Sleik Trust Account, reflecting payment for attorneys' fees and expenses, which amount will be reported for tax purposes on IRS Form 1099.

3. **CLAIMANT'S RELEASE OF WAGE AND HOUR CLAIMS.**

   a. In consideration of Company's payment set forth above, Claimant agrees not to sue or file a lawsuit, complaint or charge with any court or administrative agency against, or in any way proceed with any legal action adverse to, the Company, its insurers, indemnitors, assigns, and its or their past or present employees, representatives, agents, attorneys, or anyone else acting on its or their behalf, concerning any grievances, actions, suits, proceedings, claims, complaints, charges, judgments, or executions, whether liquidated or un-liquidated, known or unknown, suspected or unsuspected, which the Employee ever had, presently has, or claims to have had against Company or any of its board members, superintendents, principals, supervisors, insurers, indemnitors, assigns, and its or their past or present employees, representatives, agents, attorneys, or anyone else acting on its or their behalf, relating in any way to the payment or non-payment of wages by Company, which arose prior to the date of Claimant's execution of this Settlement Agreement.

   b. The release set forth in Paragraph 3.a. includes, but is not limited to:

      i. Any and all claims relating to or arising out of Company's payment, or non-payment, of wages due and owing to Claimant;

      ii. Any and all claims for violation of any federal, state, or municipal statute, ordinance, rule, or regulation relating to the payment or non-payment of wages, including but not limited to, the Fair Labor Standards Act of 1938 and Wisconsin Statutes Chapter 103.

4. **SETTLEMENT CONTINGENT ON COURT APPROVAL.**

This Settlement Agreement is contingent upon the Court's approval of the Settlement. If the Court refuses to grant Final Approval, this Settlement Agreement may be voided at either party's option, in which case this Settlement Agreement will become void and will not be used for any purpose in connection with any lawsuit, administrative or other legal proceeding, claim, investigation, or complaint brought by Claimant, except that the non-disclosure obligations in Paragraph 5 will remain in effect.

**5.**     **NON-DISCLOSURE AND COMMUNICATION.**

a.     Claimant and Claimant's counsel at Hale, Skemp, Hanson, Skemp & Sleik will not contact the media or utilize any social media to discuss this Settlement Agreement or its terms. If Claimant or Claimant's counsel have any contact with a third party seeking information about this Settlement Agreement, Claimant and Claimant's counsel may disclose only that they have "no comment" or be limited solely to words to the following effect: "The matter has been resolved."

b.     Claimant's counsel confirms that they will not use the resolution of this dispute in any of its promotional materials, nor will Plaintiff's counsel reference the resolution of this dispute or the resulting Settlement Agreement on its website.

c.     Nothing in this Settlement Agreement shall prevent Company from filing any required regulatory disclosures regarding this dispute, or otherwise prevent Company from complying with its obligations under the law.

d.     Claimant's counsel will promptly notify counsel for Company of any disclosures made by Claimant or Claimant's counsel pertaining to this dispute or the Settlement Agreement, and will also promptly notify counsel for Company of any requests made by any third-party for information regarding this dispute or the Settlement Agreement.

**6.**     **MUTUAL FULL COOPERATION.**

The Parties will fully cooperate with each other and with the Court to accomplish the terms of this Settlement Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Settlement Agreement. The Parties will use their best efforts to effectuate this Settlement Agreement, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

**7.**     **NON-DISPARAGEMENT.**

Claimant agrees that she will not make any derogatory statements about Company, its management, or its board of directors, to any third party, whether orally, in writing, or on social media, with regard to any matter that arose prior to the execution of this Settlement Agreement. The Company, its management, and its board of directors, agrees not to make any derogatory statements about Claimant to any third party, whether orally, in writing, or on social media, with regard to any matter that arose prior to the execution of this Settlement Agreement.

8. **NO ADMISSION OF LIABILITY AND NO CONCESSION ON THE MERITS.**

Company denies that it violated the law in any manner alleged by Claimant. Company further denies that it is or was an "enterprise engaged in interstate commerce," and also denies that Claimant was at any time during her employment with Company an employee "engaged in commerce" or "engaged in the production of goods for commerce." Claimant acknowledges and agrees the payments made pursuant to this Settlement Agreement are not to be construed as an admission of liability on the part of Company or any released party. The Parties enter into this Settlement Agreement to avoid the risks, uncertainty, and expense of litigation. This Settlement shall not be construed or deemed to be an admission of liability, culpability, negligence, or wrongdoing on the part of Company. Neither the Settlement, nor any act performed or document executed in furtherance of obtaining judicial approval of the Settlement or otherwise putting the terms of this Settlement Agreement into full force and effect:

   a. is or may be deemed to be or may be used as an admission or evidence of the validity of any released claim or of any wrongdoing or liability of Company; or

   b. is or may be deemed to be or may be used as an admission of any liability, fault or omission of Company in any civil, criminal or administrative proceeding in any court, arbitration proceeding, administrative agency, or other forum or tribunal in which Company is or becomes a party, other than in such proceedings as may be necessary to consummate or enforce the Settlement or obtain judicial approval thereof.

9. **NOTIFICATIONS AND COMMUNICATIONS.**

Any notifications or communications made in connection with this Settlement Agreement shall be sent to the Parties at the address of their respective counsel as follows:

HALE, SKEMP, HANSON, SKEMP & SLEIK
c/o Thomas J. Kieffer, Esq.
505 King Street, Suite 300
LaCrosse, Wisconsin 54601
[T]: 608.784.3540
[F]: 608.784.7414
[E]: tjk@haleskemp.com

*Attorneys for Claimant*

LIND, JENSEN, SULLIVAN & PETERSON, P.A.
c/o Jason R. Prochnow, Esq.
1300 AT&T Tower
901 Marquette Avenue South
Minneapolis, MN 55402
[T]: 612.333.3637
[F]: 612.333.1030
[E]: jason.prochnow@lindjensen.com

*Attorneys for Company*

10. **COMPLETE AGREEMENT.**

This Settlement Agreement contains all of the promises that Claimant and the Company have agreed to that arise out of Claimant's claim for unpaid wages. No other written or verbal agreements affect the meaning of the Settlement Agreement. The Settlement Agreement may only be changed or modified in writing. To be effective, any written changes or modifications must specifically reference the Settlement Agreement and be signed by both Parties.

11. **WAIVER.**

The waiver by one party of any breach of this Settlement Agreement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement. No rights under this Settlement may be waived except in writing and signed by the waiving party.

12. **CONSTRUCTION OF PROVISIONS.**

The Settlement shall not be construed in favor of or against any party by reason of the extent to which any party or such party's counsel participated in the drafting of this Settlement Agreement.

13. **COUNTERPARTS.**

This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

14. **BINDING EFFECT.**

This Settlement Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto.

15. **CHOICE OF LAW.**

The Parties agree that the laws of the State of Wisconsin will determine how to interpret and enforce the Settlement Agreement.

16. **HEADINGS.**

The Paragraph headings in this Settlement Agreement are for the convenience of reference only, do not constitute a part of this Settlement Agreement, and shall not be deemed to limit or affect any provision hereof.

17. **KNOWING AND VOLUNTARY AGREEMENT.**

The Parties agree that neither of them have relied on any statements made by the other in deciding to enter into the Settlement Agreement. The Parties agree that neither has said anything to the other about the meaning of the Settlement Agreement that is different than what the Settlement Agreement says. The Parties agree that they have both been afforded the opportunity to consult with a lawyer about the meaning of the Settlement Agreement, and that each Party has carefully read and understood all of the terms and effects of the Settlement Agreement.

**CAMP DOUGLAS RESCUE, INC.**

Dated: Febrvary 15 , 2017      By _____

**TIM KOLONICK**
PRESIDENT

APPROVED AS TO FORM:

Jason R. Prochnow, I.D. 1034213
Lind, Jensen, Sullivan & Peterson, P.A.
1300 AT&T Tower
901 Marquette Avenue South
Minneapolis, MN 55402
[T]: 612.333.3637
[F]: 612.333.1030
[E]: jason.prochnow@lindjensen.com

*Attorneys for Camp Douglas Rescue, Inc.*

Dated: February 16 , 2017    By _____
                                 JONI KLINGE-WEST

APPROVED AS TO FORM:

Thomas J. Kieffer

Thomas J. Kieffer, I.D.
Hale, Skemp, Hanson, Skemp & Sleik
505 King Street, Suite 300
LaCrosse, Wisconsin 54601
[T]: 608.784.3540
[F]: 608.784.7414
[E]: tjk@haleskemp.com

*Attorneys for Joni Klinge-West*

# SETTLEMENT AGREEMENT
# AND RELEASE OF WAGE AND HOUR CLAIMS

This Settlement Agreement and Release of Claims arising under the Fair Labor Standards Act of 1938 ("Settlement Agreement") is entered into between Camp Douglas Rescue, Inc., (the "Company") and Joni Klinge-West ("Claimant") (collectively referred to as the "Parties").

## RECITALS

**WHEREAS**, Company is a non-profit operator of a local ambulance service that provides around-the-clock emergency response services to Camp Douglas, Necedah, and the surrounding communities in Juneau County, Wisconsin.

**WHEREAS**, Claimant was employed by Company as an Intermediate Emergency Medical Technician ("EMT-IT") from July 11, 2015 until January 31, 2017.

**WHEREAS**, at all times Claimant was employed by Company she earned a regular rate of $9.50 per hour.

**WHEREAS**, Claimant does not dispute that she was paid her regular rate for every hour she worked on behalf of Company between July 11, 2015 and January 31, 2017.

**WHEREAS**, on or January 13, 2017, Claimant—by and through her attorney in the context of negotiations to resolve an unrelated matter—alleged that Company had violated the Fair Labor Standards Act of 1938 ("FLSA") by failing to pay Claimant overtime for hours worked per week in excess of 40 hours.

**WHEREAS**, the FLSA overtime provision states as follows:

> [N]o employer shall employ any of his *employees who in any workweek is engaged in commerce or in the production of goods for commerce*, or is *employed in an enterprise engaged in commerce or in the production of goods for commerce*, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a) (emphasis added).



**WHEREAS**, the FLSA overtime provision only compels employers to pay overtime to its employees if the employer is an "enterprise engaged in commerce or in the production of goods for commerce," or if one or more of its employees are individually "engaged in commerce or in the production of goods for commerce." *See* 29. U.S.C. § 207(a).

**WHEREAS**, the FLSA defines "enterprise engaged in commerce or in the production of goods for commerce," as an employer that, among other things, "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes as the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A)(ii).

**WHEREAS**, Company denies that it is obligated to pay overtime to its employees under the FLSA, given that at no point in the 45 year history of the Company has it done annual gross volume of sales made or business done of $500,000 or more and thus does not meet the threshold requirement of qualifying as an "enterprise engaged in commerce or the production of goods for commerce."

**WHEREAS**, Claimant alleges that she is entitled to overtime under the FLSA because she was "engaged in commerce or the production of goods for commerce" in the course of her employment with Company.

**WHEREAS**, Company and Claimant do not dispute that Claimant was not "engaged in the production of goods for commerce" at any time in the course of her employment with Company, as that term is defined in 29 C.F.R. § 779.104.

**WHEREAS**, Claimant alleges, and Company disputes, that Claimant was "engaged in commerce" because she was "performing work involving or relating to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof," as provided in 29 C.F.R. § 779.103.

**WHEREAS**, the basis for Claimant's allegation rests on the fact that, as a first responder and EMT-IT, Claimant was tasked with responding to emergencies and automobile accidents arising on public roadways and highways and was thus performing work relating to the movement of persons or things among the several States.

**WHEREAS**, Company denies Claimant's assertion that employee was individually "engaged in commerce" in her duties with Company, given that Company operates entirely within the State of Wisconsin and does not otherwise touch or affect the flow of interstate commerce into or out of the State.

**WHEREAS**, Company and Claimant agree that the FLSA and attendant regulatory provisions are not dispositive as to the outcome of their dispute over application of the FLSA to this matter.

**WHEREAS**, Company and Claimant have attempted to identify any other binding legal authority that might govern the outcome of this matter within the Western District of Wisconsin, Seventh Circuit Court of Appeals, and the United States Supreme Court, but have been unable to do so.

**WHEREAS**, Company and Claimant and agree that the application of the FLSA overtime requirements to Company and Claimant is in dispute.

**WHEREAS**, Claimant and the Company, after having had the opportunity to audit Claimant's time records, agree that Claimant worked a total of four-hundred forty-seven (447) hours for which she would be eligible to receive overtime if it were determined that she were individually covered by the FLSA.

**WHEREAS**, given that Claimant has already been paid straight time for all hours worked with Company at a regular rate of $9.50 per hour, the most that Claimant would be eligible to receive as back overtime compensation is equal to 447 hours multiplied by $4.75 (half of Claimant's regular rate), or $2,123.25.

**WHEREAS**, given that Claimant's overtime claim was first raised on January 13, 2017 and was settled on January 30, 2017, prior to the initiation of litigation, Claimant has incurred approximately $1,000 in attorneys' fees.

**WHEREAS**, Claimant has agreed to waive her ability to recover liquidated damages in the interest of compromising this disputed claim.

**WHEREAS**, Company disputes that Claimant has suffered any damages.

**NOW THEREFORE**, in consideration of the mutual promises and covenants in this Agreement and for other good and valuable consideration, which the Parties acknowledge is sufficient, the Parties agree as follows:

1. **PROCESS FOR APPROVAL OF SETTLEMENT.**

Within fifteen (15) days following receipt of the complete and fully executed Settlement Agreement, Company shall initiate a declaratory action in the United States District Court for the Western District of Wisconsin for the purposes of obtaining judicial approval of the terms of this Settlement Agreement. The Parties will then jointly file a stipulated motion for judgment on the pleadings, made pursuant to Fed. R. Civ. P. 12(c), in which the Parties will agree upon the reasonableness of the terms of the Settlement Agreement and will present evidence in support thereof. The Parties agree to submit to the Court all papers necessary to obtain approval of this Settlement Agreement.

2. **PAYMENT OF SETTLEMENT PROCEEDS.**

The Parties acknowledge and agree that Company's disputed violation of the FLSA is settled and resolved for the sum of Three-Thousand One-Hundred Twenty-Three and 25/100 Dollars ($3,123.25) (the "Settlement Amount"), itemized as follows:

    a. Two-Thousand One-Hundred Twenty-Three and 25/100 Dollars ($2,123.25) (the "Overtime Amount") as back pay wages for allegedly unpaid overtime during the period between July 11, 2015 and January 31, 2017; and,

    b. One-Thousand and 00/100 Dollars ($1,000.00) ("Attorneys' Fees) to compensate Claimant for any and all attorneys' fees she may have incurred in pursuit of this claim.

Claimant acknowledges that the Settlement Amount is sufficient and adequate consideration in exchange for the Parties' promises, releases, and covenants as set forth below. Within ten (10) business days following the Court's final approval of this Settlement Agreement, Company will deliver the Settlement Amount to Claimant's counsel, Hale, Skemp, Hanson, Skemp & Sleik, c/o Thomas J. Kieffer, Esq., at 505 King Street, Suite 300, LaCrosse, Wisconsin 54601. The Overtime Amount will be paid as regular payroll to Claimant, which means that all requisite withholdings and deductions will be made from the Overtime Amount, and will be reported for tax purposes on IRS Form W-2. The Attorneys' Fees payment will be made by check to Hale,

Skemp, Hanson, Skemp & Sleik Trust Account, reflecting payment for attorneys' fees and expenses, which amount will be reported for tax purposes on IRS Form 1099.

**3.      CLAIMANT'S RELEASE OF WAGE AND HOUR CLAIMS.**

     a.      In consideration of Company's payment set forth above, Claimant agrees not to sue or file a lawsuit, complaint or charge with any court or administrative agency against, or in any way proceed with any legal action adverse to, the Company, its insurers, indemnitors, assigns, and its or their past or present employees, representatives, agents, attorneys, or anyone else acting on its or their behalf, concerning any grievances, actions, suits, proceedings, claims, complaints, charges, judgments, or executions, whether liquidated or un-liquidated, known or unknown, suspected or unsuspected, which the Employee ever had, presently has, or claims to have had against Company or any of its board members, superintendents, principals, supervisors, insurers, indemnitors, assigns, and its or their past or present employees, representatives, agents, attorneys, or anyone else acting on its or their behalf, relating in any way to the payment or non-payment of wages by Company, which arose prior to the date of Claimant's execution of this Settlement Agreement.

     b.      The release set forth in Paragraph 3.a. includes, but is not limited to:

          i.      Any and all claims relating to or arising out of Company's payment, or non-payment, of wages due and owing to Claimant;

          ii.      Any and all claims for violation of any federal, state, or municipal statute, ordinance, rule, or regulation relating to the payment or non-payment of wages, including but not limited to, the Fair Labor Standards Act of 1938 and Wisconsin Statutes Chapter 103.

**4.      SETTLEMENT CONTINGENT ON COURT APPROVAL.**

This Settlement Agreement is contingent upon the Court's approval of the Settlement. If the Court refuses to grant Final Approval, this Settlement Agreement may be voided at either party's option, in which case this Settlement Agreement will become void and will not be used for any purpose in connection with any lawsuit, administrative or other legal proceeding, claim, investigation, or complaint brought by Claimant, except that the non-disclosure obligations in Paragraph 5 will remain in effect.

**5.      NON-DISCLOSURE AND COMMUNICATION.**

      a.      Claimant and Claimant's counsel at Hale, Skemp, Hanson, Skemp & Sleik will not contact the media or utilize any social media to discuss this Settlement Agreement or its terms. If Claimant or Claimant's counsel have any contact with a third party seeking information about this Settlement Agreement, Claimant and Claimant's counsel may disclose only that they have "no comment" or be limited solely to words to the following effect: "The matter has been resolved."

      b.      Claimant's counsel confirms that they will not use the resolution of this dispute in any of its promotional materials, nor will Plaintiff's counsel reference the resolution of this dispute or the resulting Settlement Agreement on its website.

      c.      Nothing in this Settlement Agreement shall prevent Company from filing any required regulatory disclosures regarding this dispute, or otherwise prevent Company from complying with its obligations under the law.

      d.      Claimant's counsel will promptly notify counsel for Company of any disclosures made by Claimant or Claimant's counsel pertaining to this dispute or the Settlement Agreement, and will also promptly notify counsel for Company of any requests made by any third-party for information regarding this dispute or the Settlement Agreement.

**6.      MUTUAL FULL COOPERATION.**

The Parties will fully cooperate with each other and with the Court to accomplish the terms of this Settlement Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Settlement Agreement. The Parties will use their best efforts to effectuate this Settlement Agreement, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

**7.      NON-DISPARAGEMENT.**

Claimant agrees that she will not make any derogatory statements about Company, its management, or its board of directors, to any third party, whether orally, in writing, or on social media, with regard to any matter that arose prior to the execution of this Settlement Agreement. The Company, its management, and its board of directors, agrees not to make any derogatory statements about Claimant to any third party, whether orally, in writing, or on social media, with regard to any matter that arose prior to the execution of this Settlement Agreement.

## 8. NO ADMISSION OF LIABILITY AND NO CONCESSION ON THE MERITS.

Company denies that it violated the law in any manner alleged by Claimant. Company further denies that it is or was an "enterprise engaged in interstate commerce," and also denies that Claimant was at any time during her employment with Company an employee "engaged in commerce" or "engaged in the production of goods for commerce." Claimant acknowledges and agrees the payments made pursuant to this Settlement Agreement are not to be construed as an admission of liability on the part of Company or any released party. The Parties enter into this Settlement Agreement to avoid the risks, uncertainty, and expense of litigation. This Settlement shall not be construed or deemed to be an admission of liability, culpability, negligence, or wrongdoing on the part of Company. Neither the Settlement, nor any act performed or document executed in furtherance of obtaining judicial approval of the Settlement or otherwise putting the terms of this Settlement Agreement into full force and effect:

a. is or may be deemed to be or may be used as an admission or evidence of the validity of any released claim or of any wrongdoing or liability of Company; or

b. is or may be deemed to be or may be used as an admission of any liability, fault or omission of Company in any civil, criminal or administrative proceeding in any court, arbitration proceeding, administrative agency, or other forum or tribunal in which Company is or becomes a party, other than in such proceedings as may be necessary to consummate or enforce the Settlement or obtain judicial approval thereof.

## 9. NOTIFICATIONS AND COMMUNICATIONS.

Any notifications or communications made in connection with this Settlement Agreement shall be sent to the Parties at the address of their respective counsel as follows:

HALE, SKEMP, HANSON, SKEMP & SLEIK
c/o Thomas J. Kieffer, Esq.
505 King Street, Suite 300
LaCrosse, Wisconsin 54601
[T]: 608.784.3540
[F]: 608.784.7414
[E]: tjk@haleskemp.com

*Attorneys for Claimant*

LIND, JENSEN, SULLIVAN & PETERSON, P.A.
c/o Jason R. Prochnow, Esq.
1300 AT&T Tower
901 Marquette Avenue South
Minneapolis, MN 55402
[T]: 612.333.3637
[F]: 612.333.1030
[E]: jason.prochnow@lindjensen.com

*Attorneys for Company*

10. **COMPLETE AGREEMENT.**

This Settlement Agreement contains all of the promises that Claimant and the Company have agreed to that arise out of Claimant's claim for unpaid wages. No other written or verbal agreements affect the meaning of the Settlement Agreement. The Settlement Agreement may only be changed or modified in writing. To be effective, any written changes or modifications must specifically reference the Settlement Agreement and be signed by both Parties.

11. **WAIVER.**

The waiver by one party of any breach of this Settlement Agreement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement. No rights under this Settlement may be waived except in writing and signed by the waiving party.

12. **CONSTRUCTION OF PROVISIONS.**

The Settlement shall not be construed in favor of or against any party by reason of the extent to which any party or such party's counsel participated in the drafting of this Settlement Agreement.

13. **COUNTERPARTS.**

This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

14. **BINDING EFFECT.**

This Settlement Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto.

15. **CHOICE OF LAW.**

The Parties agree that the laws of the State of Wisconsin will determine how to interpret and enforce the Settlement Agreement.

16. **HEADINGS.**

The Paragraph headings in this Settlement Agreement are for the convenience of reference only, do not constitute a part of this Settlement Agreement, and shall not be deemed to limit or affect any provision hereof.

17.    **KNOWING AND VOLUNTARY AGREEMENT.**

The Parties agree that neither of them have relied on any statements made by the other in deciding to enter into the Settlement Agreement. The Parties agree that neither has said anything to the other about the meaning of the Settlement Agreement that is different than what the Settlement Agreement says. The Parties agree that they have both been afforded the opportunity to consult with a lawyer about the meaning of the Settlement Agreement, and that each Party has carefully read and understood all of the terms and effects of the Settlement Agreement.

**CAMP DOUGLAS RESCUE, INC.**

Dated: February  15  , 2017    By _____
                                   **TIM KOLONICK**
                                   PRESIDENT

APPROVED AS TO FORM:

Jason R. Prochnow, I.D. 1034213
Lind, Jensen, Sullivan & Peterson, P.A.
1300 AT&T Tower
901 Marquette Avenue South
Minneapolis, MN 55402
[T]: 612.333.3637
[F]: 612.333.1030
[E]: jason.prochnow@lindjensen.com

*Attorneys for Camp Douglas Rescue, Inc.*

Dated: __February 16__, 2017    By _____

JONI KLINGE-WEST

**APPROVED AS TO FORM:**

_Thomas J. Kieffer_

Thomas J. Kieffer, I.D.
Hale, Skemp, Hanson, Skemp & Sleik
505 King Street, Suite 300
LaCrosse, Wisconsin 54601
[T]: 608.784.3540
[F]: 608.784.7414
[E]: tjk@haleskemp.com

*Attorneys for Joni Klinge-West*